Hortensia De **ALLENDE**, et al.,
Plaintiffs, Appellees,

v.

James **BAKER**, Secretary of State, et al., Defendants, Appellants.

No. 89–1360.

United States Court of Appeals,
First Circuit.

Heard Sept. 13, 1989.

Decided Dec. 5, 1989.

Gregory C. Sisk, Seattle, Wash., with whom Michael Jay Singer, Attys., Appellate Staff Civ. Div., Dept. of Justice, Stuart E. Schiffer, Acting Asst. Atty. Gen., Washington, D.C., and Wayne A. Budd, U.S. Atty., Boston, Mass., were on brief for defendants, appellants.

Leonard B. Boudin, with whom Edward Copeland, New York City, and Allan R. Rosenberg, Boston, Mass., were on brief for plaintiffs, appellees.

Before TORRUELLA, SELYA and MAYER,* Circuit Judges.

TORRUELLA, Circuit Judge.

This is an appeal from the decision of the United States District Court for the District of Massachusetts awarding attorney's fees under 28 U.S.C. § 2412(d), and from its decision to enhance the hourly rate of plaintiffs' counsel beyond that otherwise permitted by the Act.

The Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d), imposes liability upon the government for fees and expenses incurred in litigation, but only if the opposing party prevails within the meaning of the statute, and if the government's position was not substantially justified.[1] *See McDonald v. Sec'y of Health and Human Services*, 884 F.2d 1468, 1469 (1st Cir.1989). Thus, to avoid liability under the statute, the government must

---

\* Of the Federal Circuit, sitting by designation.

1. The Equal Access to Justice Act provides, in pertinent part, that:

 Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, *unless the court finds that the position of the United States was substantially justified* or that special circumstances make an award unjust.

 28 U.S.C. § 2412(d)(1)(A) (emphasis added).

prove either that the claiming party did not prevail,[2] or that the government's position was substantially justified.[3] *McDonald* at 1475.

At issue on appeal is whether the district court erred in determining that the "position of the United States was substantially justified." The district court determined that the government's position was not substantially justified and awarded attorney's fees to the appellant, Allende. 709 F.Supp. 18. We reverse, finding that although the government ultimately did not prevail, nevertheless its position was substantially justified.

## I. BACKGROUND

The underlying action to this appeal arose as a challenge to the denial of a non-immigrant visa to Hortensia de Allende, widow of slain Chilean president, Salvador Allende. At the invitation of several church and scholarly groups, Mrs. Allende sought entry into the United States for an eleven day lecture tour in March, 1983 to speak about matters including the state of human rights in Chile. The State Department denied Mrs. Allende's visa application under the exclusionary provisions of 8 U.S.C. § 1182(a)(27). Under the Department's interpretation, section 27 permitted it to deny entry to any person upon the determination that entry would be prejudicial to the foreign policy interests of the United States.

In 1983, Mrs. Allende was a member and honorary president of the World Peace Council, an organization which the Department of State believed to be used by the Soviet Union as a propaganda tool to advance "the Soviet goal of unilateral Western arms reduction or disarmament." At the time when she applied for a visa, the Undersecretary of State thought that the sensitive nature of ongoing negotiations related to arms limitations and reductions counseled against permitting Mrs. Allende to make speeches in the United States. He

reasoned that her speeches would lead to covert manipulation of public opinion by the Soviet Union, which would be contrary to United States' foreign policy interests.

Section 212(a) of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1101 et seq., lists the terms and conditions under which aliens may enter the United States as visitors or immigrants. Section 1101(a)(15) places the burden of proof upon the alien to prove that he or she is eligible to receive a visa, and is not subject to exclusion under any provision of the Act. Section 1182(a) lists thirty-three categories of aliens considered ineligible to receive visas, two of which were at issue in this litigation.

The first of these categories, subsection 27, is the exclusion relied upon by the government. Subsection 27 applies to:

> Aliens who the consular officer or the Attorney General knows or has reason to believe seek to enter the United States solely, principally, or incidentally to engage in activities prejudicial to the public interest, or endanger the welfare, safety, or security of the United States.

The government, by long practice, had construed this section to permit exclusion of aliens when an alien's entry or presence in the country, rather than only anticipated harmful activities after entry, would be prejudicial to the public interest.

The second category, subsection 28, permits exclusion of aliens who are, or who at any time have been,

> members of or affiliated with ... the Communist or any other totalitarian party ... of any foreign state, [or] ... any ... affiliate ... of any such ... party.

8 U.S.C. § 1182(a)(28)(C). 18 U.S.C. § 1182(d)(3)(A) authorizes a waiver of the provisions of subsection 28, although not of subsection 27, under conditions enumerated in the McGovern Amendment, 22 U.S.C. § 2691. The amendment provides standards for the Secretary of State's determi-

---

**2.** It is uncontested, on appeal, that Allende was the prevailing party.

**3.** Although, under the statute, it is also possible for the government to avoid liability by proving

that special circumstances make an award unjust, 28 U.S.C. § 2412(d)(1)(A), the government does not allege that such circumstances exist in the case.

nation of whether to recommend a waiver of subsection 28. It essentially requires the granting of a waiver, because such a waiver can only be avoided if the Secretary can certify to the Speaker of the House of Representatives that admission of the alien would be contrary to the *security interests* of the United States.[4]

The government's position in the action was that even if a waiver of subsection 28 was required by the McGovern Amendment, one of the other provisions, such as subsection 27, could still apply to deny entry to an alien. Allende contended that the McGovern Amendment required a waiver, and that subsection 27 did not authorize her exclusion, because it could apply only where the State Department expected the alien to engage in prejudicial activities after entry.[5] She also argued that if the statute did authorize her exclusion, then it violated the First Amendment.

While *Allende*, on the merits, was pending, an almost indistinguishable action had been filed in the District of Columbia Circuit by similarly situated plaintiffs. The district court there initially granted the government's summary judgment motion, rejecting the plaintiffs' argument that the government did not have authority under subsection 27 to exclude for foreign policy reasons. *Abourezk v. Reagan*, 592 F.Supp. 880 (D.D.C.1984). A divided panel of the District of Columbia Circuit vacated, and remanded for consideration of whether administrative practice supported the government's construction of subsection 27 as encompassing concerns of prejudice arising from mere entry or presence of an alien as opposed to anticipated prejudicial activity after entry. *Abourezk v. Reagan*, 785 F.2d 1043 (D.C.Cir.1986). The court further stated that, under subsection 27, an alien can be excluded only for reasons "independent of," and not merely arising from, membership in, or affiliation with, a proscribed organization. *Id.* at 1058. The Supreme Court affirmed on an equally divided vote, without opinion. *Reagan v. Abourezk*, 484 U.S. 1, 108 S.Ct. 252, 98 L.Ed.2d 1 (1987). On remand, the district court granted summary judgment to plaintiffs, and the case is currently pending on appeal.

After the District of Columbia Circuit decision, the *Allende* district court held that the government may exclude aliens under subsection 27 for foreign policy reasons only if those reasons are "independent of" and not merely "in addition to" the alien's affiliation with a communist organization. The court, in so holding, followed the reasoning of *Abourezk v. Reagan*, 785 F.2d 1043 (D.C.Cir.1986), *aff'd by an equally divided court*, 484 U.S. 1, 108 S.Ct. 252, 98 L.Ed.2d 1 (1987). The district court concluded that the government failed to establish that the reason for excluding Mrs. Allende was "separate and independent of her membership in the World Peace Council and the Women's International Democratic Federation."

After the Supreme Court's decision in *Abourezk*, a divided panel of this court affirmed the district court's decision for Allende, but on different grounds from those relied upon in *Abourezk*. This court held only that an alien's mere entry or presence in the country cannot be an "activity" prejudicial to the public interest within the meaning of subsection 27, and declined to reach the merits of the rule of independence. *Allende v. Shultz*, 845 F.2d at 1120, n. 17. The court concluded that the government had excluded Allende on the basis of her proposed activities, and

---

**4.** 22 U.S.C. § 2691 provides:

[T]he Secretary of State should, within 30 days of receiving an application for a nonimmigrant visa by any alien who is excludible from the United States by reason of membership in or affiliation with a proscribed organization but who is otherwise admissible to the United States, recommend that the Attorney General grant the approval necessary for the issuance of a visa to such alien, unless the Secretary determines that the admission of

such alien would be contrary to the security interests of the United States ...

**5.** This court ultimately agreed with Allende's position, holding that "[s]ubsection 27 plainly requires a reasonable belief that an alien will engage in specific activities harmful to the public interest. Mere entry alone does not suffice." *Allende*, 845 F.2d 1111, 1119–20. Foreign policy is included within the rubric of public interest. *Id.* at 1120 n. 17.

that § 901 of the Foreign Relations Act, P.L. No. 100–204 § 901, prohibited the denial of a visa on speech related grounds. *Id.* at 1121.

After the decision, plaintiff moved for an award of attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d), contending that the government's position had not been substantially justified. The district court granted the motion, concluding that subsection 27 clearly permits denial of visas only where the government anticipates prejudicial activity after entry. Thus, the district court held that the government's position was not substantially justified. Any other interpretation, according to the district court, would render the McGovern Amendment, limiting application of subsection 28, nugatory. Cost of living increases were granted to three attorneys, and the hourly rates of two other lawyers were raised well above the statutory cap. It is from this decision that the government now appeals.

## II. STANDARD OF REVIEW

■ The scope of review of decisions made by district courts depends upon the nature of what is being reviewed. This court will review questions of law *de novo*, questions of fact for clear error, and matters committed to the district court's discretion only for abuse of that discretion. *Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). Difficulty arises where, as here, there are mixed questions of law and fact.

However, the Supreme Court recently resolved this conflict with regard to the award of attorney's fees and costs under the EAJA in *Pierce v. Underwood,* 108 S.Ct. 2541. In that case, the Court held that the decision of a district court to allow or disallow fees is reviewable only for abuse of discretion. *Id.* at 2548.

[T]he question whether the Government's litigating position has been "substantially justified" is precisely such a multifarious and novel question, little susceptible, for the time being at least, of useful generalization, and likely to profit from the experience that an abuse-of-discretion rule will permit to develop.

*Id.* In concluding that abuse of discretion was the appropriate standard to use, the Court reasoned that standard would promote the interests of sound judicial administration because, by reason of settlement conferences and other pretrial activities, the district court is in a better position to decide whether a government position was "substantially justified," because of insights therein gained which may not be adequately conveyed by the record. *Id.* at 2547. *See also McDonald v. Sec'y of Health and Human Serv.,* 884 F.2d 1468, 1473 (1st Cir.1989).[6] Moreover, the use of such a standard would be in conformity with the goal that requests for attorney's fees not result in a second major litigation. *Underwood,* 108 S.Ct. at 2549. *See also Benitez v. Collazo–Collazo,* 888 F.2d 930, 933 (1st. Cir.1989); *McDonald,* at 1474. Thus, the district court's conclusion that the government's position was not substantially justified, and thus that attorney's fees and costs were assessable, is reviewable only for abuse of discretion.[7]

## III. SUBSTANTIAL JUSTIFICATION

■ The parameters of substantial justification litigation have been clearly defined both by this Circuit, and by the Supreme Court. *E.g., Underwood,* 108 S.Ct. 2541. As we held in *United States v. Yoffe,* 775 F.2d 447, 450 (1st Cir.1985), "the test for determining whether the government's position was 'substantially justified' is one of reasonableness; was the government's position reasonable both in law and fact." *Id.* at 449. *See also Underwood,* 108 S.Ct. at

---

**6.** "Although *Underwood* dealt with review of a district court's determination of "substantial justification" under EAJA, logic compels application of the same standard to a district court's identification of a "prevailing party." *McDonald,* at 1473.

**7.** Under the abuse of discretion standard, this court will reverse the decision of a district court only if we are left with "a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *In re Josephson,* 218 F.2d 174, 182 (1st Cir.1954).

2550 ("substantially" does not mean justified to a high degree, but instead means "justified to a degree that could satisfy a reasonable person"). The mere fact that the government lost in the underlying litigation does not create a presumption that its position was not substantially justified. *Yoffe*, 775 F.2d at 450.

 Consequently, so long as the government had a reasonable basis both in law and in fact for its position, and the facts supported its theory, then the government's position was substantially justified, and any decision of the district court to the contrary is error. *See Yoffe*, 775 F.2d at 451. While the burden of proof is upon the government to demonstrate that its position was substantially justified, *e.g.*, *McDonald*, at 1475, it need only do so by a preponderance of the evidence. *Yoffe*, 775 F.2d at 450.

> The government has the burden of proving substantial justification by a preponderance of the evidence ... In order to carry the devoir of persuasion, the government must show that it had a reasonable basis for the facts alleged, that it had a reasonable basis in law for the theories it advanced, and that the former supported the latter.

*Sierra Club v. Sec'y of the Army*, 820 F.2d 513, 517 (1st Cir.1987) (citing *United States v. Yoffe*, 775 F.2d at 450). In this case, we believe that the government unquestionably sustained its burden.

## IV. ABUSE OF DISCRETION

 Allende argues that the government's initial decision to deny her visa application was not substantially justified. She contends that her application falls squarely within subsection 28 (membership in the communist party), not within subsection 27, and thus that the McGovern Amendment requires a waiver. According to her analysis, the government's attempt to reclassify her application under subsec-

tion 27 was just an end run, or attempt to circumvent Congress' intention when it created the separate categories. The appellee contends that the government's conduct should be recognized as unreasonable in light of what she characterizes as the plain meaning of the statute as well as the statutory context and the distinction drawn by Congress between status-based and conduct-based ineligibility. Finally, Allende argues that it is significant that the Department warned in its Foreign Affairs Manual against the use of subsection 27 as a catch-all provision to exclude individuals who do not fit into one of the other 32 categories.

The government responds by arguing that its decision to deny Allende a visa was overwhelmingly justified on foreign policy grounds. The government contends that Mrs. Allende was excluded to communicate the attitude of the United States government toward the activities of the Soviet Union in pursuing propaganda activities through its instrumentality, the World Peace Council. According to the government, such communication was important at that time because of the delicate nature of arms negotiations which were then being conducted. Although this court ultimately concluded that Mrs. Allende's visa denial was not authorized, the government contends that this fact should not detract from the foreign policy concerns that it was acting on at the time. It argues that if courts do not give the Executive Branch substantial deference in the conduct of foreign affairs, and fee sanctions are lightly awarded, it may chill flexible Executive decision-making, thereby impairing the conduct of United States foreign policy.

When the State Department denied Allende's visa in 1983, no court had construed subsection 27 in a manner preventing the government from denying applicants like Allende entry.[8] Thus, the *Allende* case

---

**8.** The government argues that its interpretation of subsection 27 to allow exclusion of aliens upon a showing of anticipated prejudice which would be occasioned by the entry or presence of an alien in the United States was reasonable despite a later determination that the statute

required a showing of anticipated prejudicial activities after entry. In other words, it argues that to distinguish between entry and activities sets up a false dichotomy. Moreover, the government argues, to limit subsection 27 to post-entry activities makes subsection 29 entire-

raised issues of first impression, and it was appropriate for the government to seek specific instruction from the court on these issues. Moreover, the government's position in litigation was never without substantial justification, given decisions in parallel cases, including the support of three of the six participating members of the Supreme Court in *Abourezk*. Merely because the district court, and this court on appeal, ultimately disagreed, does not make the government's position an unreasonable one, given the other factors herein stated.

Consequently, given the state of law, both at the time the visa application was denied, and during the time the lawsuit occurred, we hold that the district court abused its discretion by awarding fees to Allende on the basis that the government's position was not substantially justified. It was at least reasonable, both in law and in fact, and under *Underwood*, that is sufficient.[9]

*Reversed.* Costs to appellant.

---

ly duplicative. That section requires denial of visas to aliens who "after entry" would engage in certain proscribed activities, such as espionage, sabotage, and public disorder.

9. Given that we hold that it was error to award fees, we do not reach the question as to the propriety and amount of the awards given.