FIDELITY GUARANTEE MORTGAGE
CORPORATION, Plaintiff, Appellant,

v.

Howard T. REBEN,
Defendant, Appellee.

No. 86–1739.

United States Court of Appeals,
First Circuit.

Argued Dec. 2, 1986.

Decided Jan. 21, 1987.

Arthur H. Goldsmith, Boston, Mass., for plaintiff, appellant.

William J. Kayatta, Jr., Portland, Me., with whom Ralph I. Lancaster, Jr. and Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, Me. were on brief, for defendant, appellee.

Before COFFIN, BOWNES and TORRUELLA, Circuit Judges.

BOWNES, Circuit Judge.

Plaintiff-appellant Fidelity Guarantee Mortgage Corporation (Fidelity) appeals from an award of attorney's fees and costs

to defendant-appellee Howard T. Reben pursuant to 42 U.S.C. § 1988. In order to understand the issues, a history of the case is necessary.

## I.

Fidelity, a Massachusetts corporation authorized to do business in Maine, opened an office in Portland, Maine, in February of 1980 for the purpose of dealing in residential mortgage loans. In July 1980, the superintendent of the Maine Bureau of Consumer Credit Protection, Barbara Reid Alexander, notified Fidelity pursuant to Me.Rev.Stat.Ann. tit. 9–A, § 6–108 that it was in violation of Maine law prohibiting charging interest in excess of 12.25% on consumer loans without Bureau approval. Alexander issued a cease and desist order at the same time. Between June and September 1980, thirty consumer actions were brought against Fidelity in the federal district court based on its violation of Maine law. Defendant Reben represented the plaintiffs in twenty-one of those cases.

In 1981, Fidelity brought a civil rights action under 42 U.S.C. § 1985 in state court against Alexander. Fidelity alleged that Alexander, her assistant Harry Giddinge, and Reben had conspired to deprive it of equal protection and of its privileges and immunities under federal law. The complaint was dismissed on April 2, 1982, by the state court on the authority of *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

On July 9, 1982, Fidelity commenced this 42 U.S.C. § 1983 action against Alexander, Giddinge, and Reben. The allegations of the complaint pertinent to defendant Reben state:

14. After July 11, 1980, Defendants, BARBARA REID ALEXANDER and HARRY W. GIDDINGS, [sic] encouraged and counseled consumers who had obtained residential mortgage loans from Plaintiff to bring civil actions against Plaintiff for which said Defendants knew or had good reason to know that Plaintiff had a good and valid statutory defense under Title 9–A, MRSA. During the same period, said Defendants also advised consumers, or caused consumers to be encouraged, counseled and advised that they should retain Defendant, HOWARD T. REBEN, to represent them in actions against Plaintiff.

15. After July 11, 1980, Defendants BARBARA REID ALEXANDER, HARRY W. GIDDINGE and HOWARD T. REBEN acted in concert and conspired to deprive Plaintiff of lawful defenses available in consumer actions under the laws of the State of Maine and further to deprive Plaintiff [sic] other rights available under state and federal law.

16. During the period September, 1980 through June, 1981, thirty consumer actions, now pending before this Court, were filed against Plaintiff in various state courts. Defendant HOWARD T. REBEN represents consumers in twenty-one of these actions.

18. Defendants acted in conspiracy with the intent of destroying Plaintiff's business in Maine. As a result of Defendants' actions, Plaintiff lost so much of its business in Maine that it was forced to close its Portland branch on or about September 28, 1981.

Damages in the amount of five million dollars were sought.

In his answer to Fidelity's complaint, Reben admitted that after July 11, 1980, some consumers were referred to him by the Maine Bureau of Consumer Protection and that he represented twenty-one consumers in actions pending in the federal district court. He denied the allegations in paragraph fifteen of the complaint charging that he had conspired with Alexander and Giddinge to deprive Fidelity of lawful defenses under Maine law.

On September 9, 1982, Reben took the depositions of Richard M. Arakelian, senior vice-president of Fidelity, and Herbert M. Jacobs, Fidelity's counsel. Arakelian and Jacobs appeared for Fidelity as its designees. Arakelian was asked to state in detail the nature and basis of the complaint by Fidelity against Reben and the information Fidelity had as the basis for its com-

plaint. Arakelian stated that the only facts he had as a basis for the complaint were that the Bureau of Consumer Protection referred a large number of consumers to Reben and the lawsuits Reben brought were all virtually identical. Jacobs, who had heard the questions asked Arakelian, was asked if he had any "other additional information or facts of supplementation that you care to add...." The only additional information was a copy of a letter from Alexander to a Nicholas Scaccia referring him to Reben concerning a consumer complaint.

On the basis of the depositions, Reben asked Fidelity to dismiss the complaint. Fidelity refused and served a notice to take Reben's deposition. Reben responded by moving for a protective order and filing a motion to dismiss the complaint. On May 24, 1983, plaintiff's attorney, James Cooper, withdrew from the case. He was replaced by Attorney Arthur H. Goldsmith who had filed an appearance on May 23. A magistrate's hearing on Reben's motions was scheduled for May 25, 1983. On the eve of the hearing, Fidelity moved to amend its complaint. The motion was granted and, on May 27, 1983, Fidelity filed a twenty-four-page amended complaint. The magistrate, in an opinion dated May 27, 1983, held that the deposition testimony of Fidelity by Arakelian and Jacobs showed that there was no factual basis for plaintiff's cause of action against Reben. The magistrate considered the additional allegations in the amended complaint and found that they "cannot overcome the plaintiff's deposition testimony concerning the nature of its action against the defendant Reben." The magistrate recommended that Reben's motion to dismiss the complaint be treated as a motion for summary judgment and be granted.

The most serious allegations in the amended complaint state:

43. During the period August—September 29, 1980, Defendants Alexander, Giddinge and Reben met together, counselled, discussed and planned a strategy for the hearings on Plaintiff's application.

45. Defendant Reben advised Defendants Alexander and Giddinge that whatever findings or conclusions Alexander wanted to make with respect to Plaintiff's license application, Alexander must avoid finding that the Plaintiff's failure to have obtained a supervised lender's license was "unintentional or the result of a bona fide error notwithstanding the maintenance of procedures reasonably calculated to avoid any such violations or error."

46. Defendant Reben so advised Defendants Alexander and Giddinge because Defendant Reben knew that such a finding of an unintentional failure or bona fide error would result in no civil liability on the part of the Plaintiff, as provided for in 9–A M.R.S.A. S. 5.201(8), in Defendant Reben's civil actions against Plaintiff.

50. Defendant Reben attended the public hearings as a behind-the-scenes advisor to Defendant Alexander.

51. Defendant Alexander conducted the hearings in anything but an impartial, fair, objective, disinterested and unbiased manner.

70. Defendant Reben, in providing secret advice and consultation to Defendants Alexander and Giddinge, assisted and participated in the deprivation of Plaintiff's rights.

85. ....

Defendant Alexander had also been secretly advised by Defendant Reben not to consider or give any credence to Plaintiff's statutory defense of an unintentional failure to obtain a supervised lender's license under 9–A M.R.S.A. S. 5.201(8).

91. Defendant Giddinge, in concert with Defendant Reben, urged and counselled Defendant Alexander not to rule upon Plaintiff's defense of an unintentional failure to obtain a license, knowing that such a ruling would bar Defendant Reben's civil actions against the Plaintiff.

After the recommendation of the magistrate that plaintiff's motion for summary

judgment be granted was filed, plaintiff's counsel filed an affidavit under Federal Rule of Civil Procedure 56(f) opposing the motion for summary judgment and asking for further discovery. The affidavit stated in pertinent part:

10. Fidelity's complaint against Reben is that Reben, having received referrals from the Bureau, and having filed suit, met with, counselled, advised, discussed and planned strategy for the Fidelity hearings with state officials responsible for making a fair and impartial decision on Fidelity's application and otherwise charged with providing Fidelity with due process of law. (Amended Complaint, para. 43–47). It is the private advocacy resulting in the alleged deprivation of Fidelity's civil right to a fair hearing, coupled with Reben's undiscovered role in soliciting or encouraging private referrals, that forms the basis for Fidelity's civil rights action against Reben. Fidelity requires discovery to develop these claims.

11. The Magistrate's Recommendation to dismiss the action against Reben is premature. Discovery should be permitted to develop facts supportive of Fidelity's claims; and that genuine issues of material fact exist such that the Summary Judgment recommendation against Fidelity and in Reben's favor should be reversed. Completion of discovery should flesh out the true basis behind Reben's involvement with the Bureau and representation of twenty-one of Fidelity's borrowers.

Reben filed an affidavit stating, *inter alia:*

Specifically, and without conceding that any particular acts alleged would in any way be improper if in fact committed by me, I did not advise Defendants Alexander and Giddinge as alleged in paragraph 45 and 46 of the amended complaint. Additionally, I never counseled or advised or "conspired" with Bureau officials concerning their regulatory proceedings against Fidelity.

On December 19, 1983, a hearing was held before the district court on the magistrate's recommendation. Despite the court's questions about the factual basis for the allegations in the amended complaint and its pointed reference to Federal Rule of Civil Procedure 11, Fidelity's attorney insisted that he be allowed an opportunity for discovery prior to the hearing on Reben's motion for summary judgment. The court granted Fidelity's discovery request, but warned plaintiff's counsel that if discovery proved fruitless it would be disposed to impose sanction under Rules 11 and 37.

On January 10, 1984, local counsel for Fidelity, Peter K. Sampson, moved for leave to withdraw. In his affidavit, Attorney Sampson gave as reasons that his advice concerning the proposed deposition of Reben and the prosecution of the action was "no longer sought or heeded by either plaintiff or co-counsel, and that I have no control over Plaintiff's future cause of action" and "to protect myself from the possibility of sanctions being sought against me for matters over which I have no control." Sampson's motion to withdraw as counsel for Fidelity was granted. No Maine attorney took Sampson's place and the case proceeded solely with present counsel, Arthur H. Goldsmith of Massachusetts.

An amended notice to take Reben's deposition was filed and Fidelity also noticed the depositions of Superintendent Alexander and her assistant, Giddinge. Alexander's deposition was taken on February 17, 1984. She flatly denied conspiring with Reben or having any communications with him of the type alleged in the complaint. Reben asked again that the action against him be dismissed. Fidelity at first refused and then offered to dismiss the suit if Reben would waive any right to the benefit of sanctions under Rule 11. This offer was refused by Reben. On June 22, 1984, Fidelity moved to dismiss "all claims and appeals" against Reben "with prejudice and without costs."

A hearing on pending motions was held before the magistrate on November 2, 1984. The magistrate granted the motions of both Reben and Fidelity to dismiss "without prejudice and without ruling on the question of costs and attorney's fees." Fidelity filed an objection to that part of the magistrate's report which granted Reben's motion to dismiss. The district court overruled Fidelity's objection to the magistrate's report and final judgment was entered dismissing the action against Reben on February 12, 1985. This was more than two and one-half years after the commencement of the action on July 9, 1982.

Reben moved for attorney's fees and the imposition of sanctions on March 29, 1985. Fidelity objected and a hearing on the motion was held on September 13, 1985. Subsequent to the hearing, Reben waived any claims for fees and sanctions against counsel for Fidelity. On February 27, 1986, the court issued a written memorandum and order. It concluded "that Fidelity's action against Reben was frivolous, unreasonable, and groundless from the outset and that, in any event, Fidelity continued to litigate after it clearly became so. The Court holds that Reben is entitled to an award of attorneys' fees and costs under 42 U.S.C. § 1988."

After a subsequent hearing, the court, on May 30, 1986, assessed attorney's fees in the amount of $16,682.86. This was the sum which Reben's insurance carrier paid to the attorneys who represented him throughout the case. No sanctions were imposed. After unsuccessfully moving to alter or amend the judgment under Federal Rule of Civil Procedure 59, Fidelity appealed.

## II.

Fidelity attacks the award of attorney's fees on the following grounds: (1) that as a civil rights' plaintiff who sought to dismiss its own case it should not have been ordered to pay the amount of attorney's fees billed to an insurance company; (2) that the claim for attorney's fees was not timely filed under the district court's local rules; (3) that a civil rights defendant is not entitled to fees for work on the case and time spent pursuing his claim for fees when the actual recipient of the fees is an insurance company that had no expectation of recovering such fees; (4) that the district court's computation of attorney's fees was clearly erroneous; and (5) that the district court abused its discretion by denying motions of plaintiff, by awarding fees for time spent after plaintiff sought to dismiss its action and by refusing to amend its order.[1]

We find at the outset that Fidelity had absolutely no factual basis for the allegations made against Reben in the original and amended complaint. We agree with the district court that Fidelity "continued to litigate after it became clear that the claims were baseless." Our reading of the record confirms the district court's finding that in bringing this action and continuing to pursue it, Fidelity sought to blunt the effect of the suits brought against it by Reben and bring about a favorable resolution of those actions. In short, the record leads us to conclude that Fidelity's civil rights action against Reben was not bona fide, but a counterattack against the consumer actions. There can be little question that under the pertinent law the district court was well within its discretion in awarding defendant attorney's fees. In the seminal case in this area, the Court held that "a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978). The Court then cautioned district court judges against assessing attorney's fees against plaintiffs simply because they do not ultimately pre-

---

1. Fidelity raises two other issues that do not warrant discussion: (1) that the court was not warranted in verbally chastising plaintiff's counsel; and (2) that the court erred in issuing execution on the judgment when it did.

vail. *Id.* at 422, 98 S.Ct. at 700. In language that is directly applicable to the facts of this case, it stated:

> Hence, a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so. And, needless to say, if a plaintiff is found to have brought or continued such a claim in bad faith, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense.

*Id.* (footnote omitted). Unlike *Hughes v. Rowe*, 449 U.S. 5, 15, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980), where the Court found no "such finding" to support the fee award, the facts and the findings of the district court here amply support a fee award. *Cf. Olitsky v. O'Malley*, 597 F.2d 303, 305 (1st Cir.1979) (where action not frivolous, unreasonable, groundless or vexatiously brought, district court did not abuse its discretion in denying attorney's fees).

We reject Fidelity's argument that because an insurance company is the ultimate recipient of the attorney's fee award, it should be treated differently than an award to an individual. We have found no cases making such a distinction. In fact, the only case we have found directly on point is to the contrary:

> The Supreme Court concluded in *Christiansburg Garment Co. v. EEOC*, *supra*, 434 U.S. at 420, 98 S.Ct. at 699, that the purpose of awarding attorneys' fees to a defendant in a civil rights case is to deter frivolous or harassing litigation; the fact that a defendant is insured is irrelevant to this purpose.

*Ellis v. Cassidy*, 625 F.2d 227, 230 (9th Cir.1980). *Cf. Duncan v. Poythress*, 750 F.2d 1540, 1543 (11th Cir.1985), (court held that "the financial need of the litigant is not the determinative factor in awarding fees under section 1988"). (Footnote omitted.) In a case such as this, where the plaintiff had no factual basis for the complaint and the only reason for persisting in prosecuting the suit was for harassment,

an award of attorney's fees can and should be made to deter such conduct in the future and it makes no difference that the recipient of the fee award is defendant's insurance carrier rather than the defendant individually.

The next question is the amount of the award. Our examination of the affidavits and other material filed by defendant fully supports the district court's fee award. In conformity with *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984), the fee was calculated according to the prevailing market rate in the Portland, Maine community. Defendant's attorney kept and included with the affidavits contemporaneous time records as required under *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 951–52 (1st Cir.1984). Fidelity has not seriously challenged the reasonableness of the time spent, the reasonableness of the hourly rates, or the reasonableness of the expenses claimed. *Id.* at 952–57. And there is no basis for such a challenge. Nor is there any legal basis for Fidelity's position that defendant is not entitled to recover fees incurred in obtaining fees authorized under section 1988. Such "pursuit fees" are recoverable to the extent that they are reasonable. *Id.* at 957–58. *See also Cruz v. Hauck*, 762 F.2d 1230, 1233–34 (5th Cir.1985); *Institutionalized Juveniles v. Secretary of Public Welfare*, 758 F.2d 897, 924–25 (3d Cir. 1985); *Laffey v. Northwest Airlines, Inc.* 746 F.2d 4, 29–30 (D.C.Cir.1984), *cert. denied*, 472 U.S. 1021, 105 S.Ct. 3488, 87 L.Ed.2d 622 (1985).

■ The next issue is a variation on the prior one. Fidelity contends that fees should not be assessed against it for the time period after it sought to dismiss its own action. We find no basis in equity or law for the proposition that a *mea culpa* confession limits the prevailing party's basis for a fee award under section 1988. On December 19, 1983, Fidelity was warned by the district court about the consequences of proceeding without any factual basis for its allegations. It insisted on being given the right to further discovery. Six months

later, on June 22, 1984, it finally admitted that it had no basis for its motion against defendant by moving to dismiss all claims against him "with prejudice and *without costs.*" (Emphasis added). Fidelity started this law suit without any basis and it persisted in it until it was convinced that it could no longer serve any purpose. It ill behooves Fidelity to now claim that the additional time spent by defense counsel in obtaining what was due defendant under section 1988 should not be counted against it. Fidelity's decision to terminate an ill conceived and wrongly prosecuted law suit cannot serve to limit the consequences of a course of action it initiated and persistently followed.

Fidelity's reliance on *Evans v. Jeff D.,* — U.S. ——, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986), is woefully misplaced. In that case, the Court found that the district court did not abuse its discretion in upholding a fee waiver in a class action settled by a consent decree where the decree secured plaintiffs broader injunctive relief than they could have reasonably expected to achieve at trial. *Id.* 106 S.Ct. at 1545. In no way did the Court suggest or intimate that a plaintiff had a right to limit its liability for attorney's fees under section 1988 by dismissing a civil rights action it had wrongfully brought and prosecuted.

The final issue is whether the claim for attorney's fees was timely filed under Maine District Court Rule 30, which provides:

Any claim for attorney fees shall be filed with the Court and served upon opposing counsel, together with supporting memorandum and affidavits, within 45 days after entry of judgment. For good cause shown on motion filed within such period, the Court may extend the time for filing the claim for attorney fees.

This rule must be construed in light of Federal Rule of Civil Procedure 6(a) which provides in pertinent part:

(a) Computation. In computing any period of time prescribed or allowed by these rules, by the local rule of any district court, by order of court, or by any

applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included.

■ Judgment was entered on February 12, 1985. Under Rule 6(a), the forty-five-day period began to run the next day, February 13. The motion for attorney's fees was filed on March 29, exactly forty-five days later. Fidelity argues that because its counsel did not receive a copy of the motion until April 1, service was late because it was not made within the forty-five-day period of the local rule. This ignores, however, the controlling provisions of Federal Rule of Civil Procedure 5(a). "Service upon the attorney or upon a party shall be made by delivering a copy to him or by mailing it to him.... Service by mail is complete upon mailing." There is no question that a copy of the motion for attorney's fees was mailed to Fidelity's counsel on March 29, 1985. The filing of the motion and service of a copy upon opposing counsel met the forty-five-day requirement of Maine District Court Rule 30.

■ Fidelity makes an additional procedural attack on the motion based upon Local Rule 30. It claims that because the motion did not contain any affidavit evidence of the amount of fees claimed, it was defective and should have been rejected by the district court. No precedent has been cited for this proposition; the argument is pitched upon the grounds of reasonableness and procrastination and delaying tactics by the defendant—the case of a colorblind pot calling a white kettle black. We reject this argument. It is within the discretion of the .district court to determine when the supporting affidavits shall be filed. Where the entitlement to any attorney's fees is hotly contested, the district court may, as it did here, determine that question before reaching the computation of the award. *See Lund v. Affleck,* 587 F.2d 75, 77 (1st Cir.1978); *Sargeant v. Sharp,* 579 F.2d 645, 648 (1st Cir.1978). *See also* Local Rule 1(c) (court may relax local rules in exceptional circumstances when justice so requires). We see no prej-

udice to either party in such a two-step approach to the question of attorney's fees. Indeed, in cases where the judge determined either that no attorney's fees would be appropriate or imposed limits on them, this approach would eliminate the vain effort that would otherwise be spent in determining their amount.

We have considered all of Fidelity's other arguments and find them to be so flimsy as not to require discussion.

*Affirmed.*

■ Since there was no factual or legal basis for this appeal, double costs and attorney's fees in the amount of $1,000 are assessed against Fidelity. Fed.R.App.P. 38.

Defendant shall file a motion for attorney's fees and costs attendant upon this appeal along with supporting affidavits within sixty days hereof with the clerk of this court. Fidelity shall have thirty days to file responsive pleadings. Such fees are awarded under 42 U.S.C. § 1988.

*So ordered.*