**Madeleine E. MORIN**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES.**

Civ. No. 91–316–D.

United States District Court,
D. New Hampshire.

Feb. 3, 1993.

Elizabeth R. Jones, Manchester, NH, for plaintiff.

Elaine Marzetta Lacy, Asst. U.S. Atty., Concord, NH, for defendant.

## ORDER

DEVINE, Senior District Judge.

Presently before the court is plaintiff's motion for an award of attorney's fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(a) and (d) (EAJA). The Secretary objects on various grounds.

### I. Background[1]

As the result of an injury sustained in September 1982, plaintiff applied for social security disability insurance benefits on three separate occasions. The latter two applications, of September 19, 1987, and July 29, 1989, were subject to this court's review. Finding that the ALJ's conclusions regarding plaintiff's credibility were not supported by substantial evidence, the court reversed the Secretary's decision that plaintiff's impairment did not prevent her from returning to past relevant work. Moreover, the court found that there was no need to remand this case to the Secretary for further consideration because the record before the court demonstrated that under the Secretary's regulations, plaintiff was per se disabled. Accordingly, the court on April 1, 1992, pursuant to 42 U.S.C. § 405(g), ordered a sentence four remand, which merely directed the Secretary to compute the disability benefits due plaintiff. Judgment was so entered on April 13, 1992.

On April 27, 1992, the Secretary moved the court under Rule 59(e), Fed.R.Civ.P., to alter and amend judgment. Said motion was denied on June 5, 1992, and that post-judgment judgment was entered on June 18, 1992.

### II. Discussion

The EAJA provides:

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs ... incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court

---

1. For a more complete recitation of the facts of this case, see the court's order of April 10, 1992.

having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (West Supp.1992). Thus, eligibility for a fee award in any civil action requires: (1) that the claimant be a 'prevailing party'; (2) that the Government's position was not 'substantially justified'; (3) that no 'special circumstances make an award unjust'; and, (4) pursuant to 28 U.S.C. § 2412(d)(1)(B), that any fee application be submitted to the court within 30 days of final judgment in the action and be supported by an itemized statement.

*Commissioner, INS v. Jean,* 496 U.S. 154, 158,. 110 S.Ct. 2316, 2318, 110 L.Ed.2d 134 (1990). Not all of these conditions are at issue in this case. For example, defendant does not dispute that plaintiff is a "prevailing party". It is settled that " 'if the remand order directs the Secretary to award benefits, the claimant is a prevailing party.…' " *Labrie v. Secretary of HHS,* 976 F.2d 779, 786, (1st Cir.1992) (quoting *Hafner v. Sullivan,* 972 F.2d 249, 250–51 (8th Cir.1992)). Accordingly, the court finds that plaintiff is a "prevailing party". *Jean, supra,* 496 U.S. at 160, 110 S.Ct. at 2319.

Nor does defendant suggest that special circumstances exist that would make an award unjust. *See, e.g., id.* ("If the Government then asserts an exception for … circumstances that render an award unjust, the court must make a second finding regarding [this] additional threshold condition[ ].").
However, by way of its first objection to an award of fees in this case, defendant challenges the court's subject matter jurisdiction.

### A. Statutory Filing Requirement

■ Defendant contends that because plaintiff did not file her EAJA fee application until almost three months after the court

entered final judgment in this action on June 18, 1992, such untimeliness deprived the court of jurisdiction.

■ As noted above, one of the statutory prerequisites to an EAJA award is that a party file a fee application within thirty days of final judgment in the action. *Id.* at 158, 110 S.Ct. at 2318; *Labrie, supra,* 976 F.2d at 780. The thirty-day filing requirement of EAJA is jurisdictional, and accordingly may not be waived by either the parties or the court. *Howitt v. United States Dept. of Commerce,* 897 F.2d 583, 584 (1st Cir.), *cert. denied,* 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990) (collecting cases). However, "[a]s used in EAJA, final judgment 'means a judgment that is final and not appealable, and includes an order of settlement.' 28 U.S.C. § 2412(d)(2)(G). Under Fed.R.App.P. 4(a)(1), the remand order [is] 'not appealable' after 60 days [2]—giving claimant a total of 90 days to file for fees." *Labrie, supra,* 976 F.2d at 780 n. 1. *Accord Lenz v. Secretary, HHS,* 798 F.Supp. 69, 71 (D.N.H.1992) (under sentence four of section 405(g), " 'final judgment' enters as of the time of remand so that 'the filing period begins after the final judgment … is entered by the court and the appeal period has run, so that the judgment is no longer appealable' ") (quoting *Melkonyan v. Sullivan,* 501 U.S. ——, ——, 111 S.Ct. 2157, 2165, 115 L.Ed.2d 78 (1991)).[3]

Furthermore, where, as here, a timely motion is filed under Rule 59(e), Fed.R.Civ.P., to alter or amend the judgment, "the time to appeal [the underlying judgment] for all parties shall run from the entry of the order … granting or denying … such motion." Rule 4(a)(4), Fed.R.App.P. *See Fiore v. Washington Co. Com. Mental Health Ctr.,* 960 F.2d 229, 233 (1st Cir.1992).

The fatal flaw in defendant's argument is that it ignores the statutory definition of "final judgment", § 2412(d)(2)(G), and does

---

**2.** Rule 4(a)(1), Fed.R.App.P., provides in relevant part that if the United States or one of its agencies is a party, any party has sixty days to file a notice of appeal.

**3.** The court's reference here is only to those sentence four remands in which the court directs

the Secretary to follow a command, such as computing benefits, and not to the now recognized subcategory of sentence four remands where further administrative proceedings are contemplated. *See Labrie, supra,* 976 F.2d at 784; *Lenz, supra,* 798 F.Supp. at 72.

not factor into the calculus any appeal period. Finding that the relevant time limitations expired on September 16, 1992, the court holds that plaintiff's motion for an award of fees, filed on September 15, 1992, was timely filed.

## B. Substantial Justification

■ Here, as an exception to plaintiff's eligibility for fees, the government does assert that its position was substantially justified.

> Under the EAJA, it is the government's burden to show, by a preponderance of the evidence, that its position was substantially justified. *McDonald v. Secretary of HHS,* 884 F.2d 1468, 1475 (1st Cir.1989); *United States v. Yoffe,* 775 F.2d 447, 450 (1st Cir.1985). To meet this benchmark, *both* the government's underlying (agency) position *and* its litigation position must be substantially justified. *McDonald,* 884 F.2d at 1475–76.

*United States v. Plat 20, Lot 17, Great Harbor Neck,* 960 F.2d 200, 208 (1st Cir.1992) (emphasis added). The meaning of the phrase "substantially justified" in section 2412(d)(1)(A) was resolved by the United States Supreme Court in *Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). Therein, the Court held that that statutory phrase means " 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Id.* at 565, 108 S.Ct. at 2550. "That is no different from the 'reasonable basis both in law and fact' formulation adopted by ... the vast majority of ... Courts of Appeals." *Id.* (citing, inter alia, *Yoffe, supra,* 775 F.2d at 449–50); *Jean, supra,* 496 U.S. at 158 n. 6, 110 S.Ct. at 2318 n. 6. As articulated by the First Circuit, " 'the government must show that it had a reasonable basis for the facts alleged, that it had a reasonable basis in law for the theories it advanced, and that the former supported the latter.' " *Great Neck Harbor, supra,* 960 F.2d at 208 (quoting *Sierra Club v. Secretary of the Army,* 820 F.2d 513, 517 (1st Cir. 1987)).

It is settled that being wrong or losing is not the standard. The government's agency and litigation positions, even though incorrect and thus ultimately unsuccessful, can be justified if they " 'ha[d] a reasonable basis in law and fact.' " *Id.* 960 F.2d at 211–12 (quoting *Underwood, supra,* 487 U.S. at 566 n. 2, 108 S.Ct. at 2550 n. 2). Thus, "[t]he 'substantial justification' requirement of the EAJA ... [is] one that properly focuses on the governmental misconduct giving rise to the litigation." *Jean, supra,* 496 U.S. at 165, 110 S.Ct. at 2322.

Regarding the ALJ's failure to reopen plaintiff's 1987 application, the court finds that such position was not substantially justified, as it was not "justified to a degree that could satisfy a reasonable person." *Underwood, supra,* 487 U.S. at 565, 108 S.Ct. at 2550. Underpinning this determination are the court's earlier conclusions based upon the record then before it. The ALJ had acknowledged the request to reopen and had never explicitly denied the request. Further, the record revealed that he considered new evidence and reached a decision on the merits. Such was enough for the court to find that the ALJ had, de facto, reopened the 1987 application. Accordingly, the court concludes that the failure to reopen cannot be said to have been reasonably based in law and fact. *Great Neck Harbor, supra,* 960 F.2d at 211–12.

Upon consideration of other aspects of the government's agency position in this matter, the court arrives at a similar result. The crux of the ALJ's determination that plaintiff's impairment did not prevent her from returning to past relevant work was his finding that her testimony regarding her subjective complaints was not credible and was exaggerative in some respects. There is no doubt in the court's mind that the ALJ and the Secretary had a reasonable basis in law for some theories advanced, *e.g.,* responsibility for credibility determinations and deference due same. However, based upon the record before the court, there was no reasonable basis—at times, no basis at all—for many of the ALJ's factual allegations. For example, he repeatedly made erroneous statements of fact, revealing an inaccurate review of record evidence. Other factual allegations were baldly made with no support

given, and some were directly contradicted by record evidence. At times, he also misconstrued or overlooked plaintiff's testimony. Thus, the court has no difficulty concluding that the agency's position was not substantially justified; a reasonable person would not herein be satisfied that there was a reasonable basis for many of the facts alleged upon which the credibility issue turned. *Underwood, supra,* 487 U.S. at 565, 108 S.Ct. at 2550. The court finds that the government, having failed to meet the first prong of this benchmark, has failed to make a showing that its position was substantially justified. *Great Harbor Neck, supra,* 960 F.2d at 208. Accordingly, the court turns to defendant's final objections, all of which challenge as being excessive the amount of the requested fee award.

### C. The Fee Award

The EAJA provides that

'fees and other expenses' includes ... reasonable attorney fees (The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that ... (ii) attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.).

28 U.S.C. § 2412(d)(2)(A) (West Supp.1992).

While bound by the limitations contained in section 2412(d), the court nonetheless "will always retain substantial discretion in fixing the amount of an EAJA award." *Jean, su-*

*pra,* 496 U.S. at 163, 110 S.Ct. at 2321; *McDonald, supra,* 884 F.2d at 1474.

Here, plaintiff seeks an award of fees totaling $5,153.70, which figure represents a total of 41.9 hours expended at a rate of $123 per hour. Defendant does not contest the number of hours claimed, but strenuously argues that the hourly rate is excessive and that the flat rate requested does not adequately distinguish the types of services provided. Defendant also raises the argument that because plaintiff's counsel did not submit contemporaneous time sheets, her request for fees should suffer a substantial reduction.

#### 1. Excessive Hourly Rate.

The EAJA, like other fee-shifting statutes, provides for "reasonable attorney fees". 28 U.S.C. § 2412(d)(2)(A). *See also* Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988 (the Fees Act).

■ However, unlike the Fees Act, for example, the EAJA provides strict statutory guidance as to what may be considered a reasonable fee.[4] *See generally Sierra Club, supra,* 820 F.2d at 524 (EAJA differs in material respects from other fee-shifting statutes, such as Fees Act).

■ The starting point in the EAJA analysis is that the "amount of fees awarded ... shall be based upon prevailing market rates for the kind and quality of services furnished." § 2412(d)(2)(A). Accordingly, plaintiff submitted evidence by way of an affidavit that such rate is $150 per hour, a figure not disputed by defendant. However, "the EAJA caps hourly rates and allows courts—other than adjusting for inflation ...—to lift the cap only in narrowly con-

---

4. The question of what constitutes a "reasonable attorney's fee" under section 1988 is guided by the district court's adherence to certain judicially developed general criteria. *Furtado v. Bishop,* 635 F.2d 915, 920–21 (1st Cir.1980) (discussing calculation of "lodestar" fee that is then adjusted upward or downward to reflect certain factors); *King v. Greenblatt,* 560 F.2d 1024, 1026 (1st Cir.1977), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978). In *King,* the First Circuit approved approximately a dozen factors to be considered. It is this court's opinion that these *King* factors are irrelevant to the determination of a "reasonable" hourly rate under EAJA. *See Underwood, supra,* 487 U.S. at 573, 108 S.Ct.

at 2554 (such factors "are little more than routine reasons why market rates are what they are ... [or] even worse ... a description of market rates"); *Weinberger v. Great Northern Nekoosa Corp.,* 925 F.2d 518, 526 (1st Cir.1991) ("If an alternative method is not expressly dictated by applicable law, we have customarily found it best to calculate fees by means of the time-and-rate method known as the lodestar."); *Wells v. Bowen,* 855 F.2d 37, 42–43 (2d Cir.1988) (distinguishing EAJA calculation of fees from the "so-called 'lodestar' " calculation used under various other statutes that mandate an award of "reasonable" fees, citing § 1988 and ERISA).

strained circumstances. Courts have discretion to consider whether 'a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.' " *Sierra Club, supra*, 820 F.2d at 524 (quoting § 2412(d)(2)(A)). Here, plaintiff only requests that the $75 per hour statutory figure be adjusted upward for inflation. She does not request that the cap be lifted based upon any "special factor".[5]

### a. Cost-of-Living Adjustment (COLA)

█ While the Secretary may be correct that cost-of-living increases should not be automatically awarded (and are "not absolutely *require[d]* " by the statute), *Baker v. Bowen*, 839 F.2d 1075, 1084 (5th Cir.1988), he urges an inappropriate and cramped interpretation of the relevant standard. The Secretary's assertion that increases in the statutory cap of $75 per hour are to be awarded "only in rare circumstances," and his reliance upon *Baker, supra*, for that proposition, are misguided in the COLA context. In fact, the authority to which the court was guided by the Secretary actually and explicitly discusses only the "special factor" analysis. *See Baker, supra*, 839 F.2d at 1082. However, reading further along in *Baker*, the Fifth Circuit notes the following:

> Clearly, by mentioning it in the statute, Congress intended that the cost of living be seriously considered by a fee-awarding court. Except in unusual circumstances, therefore, if there is a significant difference in the cost of living since 1981 in a particular locale that would justify an in-

crease in the fee, then an increase should be granted. . . .

*Id.* at 1084. *See also Johnson v. Sullivan*, 919 F.2d 503, 505 (8th Cir.1990) (district court's refusal to grant a cost-of-living increase upon proper proof "was not a valid exercise of discretion"); *Wells, supra*, 855 F.2d at 43 ("Notwithstanding the narrowing of the 'special factor[s]' language in *Pierce*, however, it remains clear that the EAJA's $75 per hour rate can be increased to reflect a demonstrable increase in the cost of living since the date of the statute's effectiveness."); *Sierra Club, supra*, 820 F.2d at 521 (language of EAJA ceded judicial discretion to augment hourly rate due to inflation, and court "decline[d] to join" those courts whose approach has been "tight-fisted".). *Cf. Doucette v. Sullivan*, 785 F.Supp. 1056, 1061 (D.Me.1992) (where plaintiffs failed to provide court with any supporting information to justify adjusting $75 statutory figure for inflation, court declined to do so).

█ While admittedly unable to cite supporting authority for the proposition, plaintiff attempts to persuade the court that when computing the relevant cost-of-living adjustment, the Consumer Price Index (CPI) for 1980, the year EAJA was enacted, should be used, rather than the CPI for 1981, the year the EAJA first became effective.[6] While possessing a slightly logical ring, the argument is unavailing. A diligent search by the court revealed one reported case in which the plaintiff argued, unsuccessfully, for a COLA from a date earlier than 1981. *See Action on Smoking & Health [ASH] v. C.A.B.*, 724 F.2d 211, 218 (D.C.Cir.1984). Therein, the *ASH*

---

**5.** Although there is some argument by the parties implicating a "special factor" analysis, this seems initiated, not by any request by plaintiff, but rather by defendant's citation to *Underwood* which accompanied his criticism of plaintiff's assertions. Not surprisingly, plaintiff felt compelled to respond. The court notes that there is a split in authority on the issue of whether social security law passes muster as "an identifiable practice specialty such as patent law," an example set forth by the Supreme Court, *Underwood, supra*, 487 U.S. at 572, 108 S.Ct. at 2553, thus meeting the "distinctive knowledge or specialized skill" requirement of the "special factor" exception for " 'limited availability of qualified attorneys for the proceedings involved.' " *Id.* (quoting the statutory language of § 2412(d)(2)(A)(ii)). "Where such qualifications

are necessary and can be obtained only at rates in excess of the $75 cap, reimbursement above that limit is allowed." *Id.* However, because plaintiff does not request a fee in excess of the statutory cap ($75 per hour [adjusted for inflation] ), *see Underwood, supra*, 487 U.S. at 572, 108 S.Ct. at 2553, the court need not reach the "special factor" issue at this time.

**6.** The majority of federal courts seem to have grappled with a different issue, whether a COLA should be measured from 1981 or from the date of reenactment in 1985, the majority holding that 1981 is proper. *Baker, supra*, 839 F.2d at 1084 (collecting cases, including *Sierra Club v. Marsh*, 639 F.Supp. 1216 (D.Me.1986), *aff'd* 820 F.2d 513 (1st Cir.1987)).

court found cost-of-living figures predating EAJA's effective date to be irrelevant, concluding that the "$75 maximum presumably incorporated increases in the cost of living to that date [effective date of October 1, 1981]. We must assume that Congress believed that $75 in October 1981 dollars, not January 1979 [or 1980] dollars, was an appropriate fee cap." *Id.* Persuaded by this reasoning, and thus joining with other courts which have held that Congress intended COLAs to reflect the increase in inflation since 1981, this court holds that plaintiff is only entitled to an adjustment for inflation since the effective date of the statute. *Sierra Club, supra,* 820 F.2d at 522. *Accord Harris v. Sullivan,* 968 F.2d 263, 266 (2d Cir.1992); *Dewalt v. Sullivan,* 963 F.2d 27, 30 (3d Cir.1992); *Johnson, supra,* 919 F.2d at 505; *Baker, supra,* 839 F.2d at 1084.

Based upon the relevant CPI figures submitted, *see generally Harris, supra,* 968 F.2d at 265 (cost of living properly measured by CPI) (and cases collected therein); *Johnson, supra,* 919 F.2d at 504 (CPI constitutes "proper proof"), plaintiff suggests, and defendant does not dispute, that the cost of living has risen 49.6 percent since October 1981, resulting in a rate of $112 per hour, the statutory cap in this case. Accordingly, the court finds that plaintiff is entitled to this rate.

### b. Flat Rate

■ Defendant argues that the fee award sought is also excessive because plaintiff makes no distinction between the types of services provided by counsel. It is defendant's contention that $75 per hour is reasonable for "core" work (reviewing file, research, and preparation of brief), that $60 per hour is not unreasonable for time spent preparing the motion for attorney's fees, and that $40 per hour is often the rate for "non-core" work (reviewing documents, interviews, correspondence, and telephone conversations).

At the outset, the court finds defendant's reliance on *Perez v. University of P.R.,* 600 F.2d 1 (1st Cir.1979), to be misplaced, as the fee award at issue in *Perez* was pursuant to 42 U.S.C. § 1988, which analysis is typically guided by the standards set forth in *King,*

*supra,* 560 F.2d 1024. *See supra* note 4. Likewise, the court finds that the facts of the instant case bear no resemblance to those of *Trinidad v. Secretary,* 935 F.2d 13, 18 (1st Cir.1991), also cited by defendant. There, the First Circuit found that an award of $40 per hour was well within the district court's discretion because "counsel's work ... entailed little if any substantive analysis or other 'core' legal work." *Id.* In *Trinidad,* "[c]ounsel's *only* court submission was the complaint, ... justifiably characterized as 'boilerplate.' " *Id.* (emphasis added). In the instant case, such is not the court's perception. Plaintiff's successful effort to reverse the decision of the Secretary necessitated a lengthy memorandum in which many critical issues were raised. Moreover, plaintiff found it necessary to submit a reply brief to address facts and issues raised by the defendant.

It is apparent to the court that the calculation of section 1988 fees awards, for example, may be "guided", *Furtado, supra,* 635 F.2d at 921, by a "lodestar" calculation which in part entails "assigning appropriate hourly rates for the kinds of work done by those at different levels of expertise," *id.* at 920. *See also Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 951 (1st Cir.1984) (in § 1988 case court must consider type of work done in calculating a reasonable hourly rate). However, the court is disinclined to accept as appropriate the hourly rates urged by the defendant in the instant EAJA case. This conclusion is based upon the statutory language of EAJA itself and upon the court's concurrence with those courts, including the First Circuit, which have articulated the view that the EAJA is materially different "from other fee-shifting statutes (such as the Fees Act)." *Sierra Club, supra,* 820 F.2d at 524.

Absent authority supportive of defendant's view, the court is persuaded that no differentiation of rates is mandated or necessary. *We Who Care, Inc. v. Sullivan,* 781 F.Supp. 57, 63 n. 13 (D.Me.1991) (absent EAJA authority, court rejected theory that different rates should be applied to different activities). *See also Sierra Club, supra,* 639 F.Supp. at 1221 n. 4 (court clearly rejected argument that "the type of work ... per-

formed [by] local counsel [did] not justify the [full statutory] fee permitted by the EAJA ... because he did not engage in 'core' legal work," but rather only " 'attended conferences and hearings, ... reviewed and signed all pleadings, and advised [out-of-state counsel] on matters relating to local rules' "). Here, the court cannot say that the $112 hourly rate, already found to be appropriate, is excessive compensation for the services provided.

### 2. Contemporaneous Time Sheets

■ Relying on First Circuit authority found in *Grendel's Den, supra,* 749 F.2d at 952, defendant contends that because plaintiff "did not submit contemporaneous time sheets, but rather an itemized summary, prepared after the fact," any fee award should be substantially reduced. In response, plaintiff points out that the submission at issue, attached to counsel's affidavit as an exhibit, is an "itemization", not a "summary". Furthermore, plaintiff clarifies that the itemization submitted is in the form of a computer print-out, the information therein having been contemporaneously dictated and entered into counsel's computer.

The court unhesitatingly rejects defendant's contention for the reasons that follow. Under the language of the EAJA, an application for fees must include "an itemized statement from any attorney ... stating the actual time expended...." Section 2412(d)(1)(B). This requirement was recognized by the United States Supreme Court in *Jean, supra,* 496 U.S. at 158, 110 S.Ct. at 2318, wherein the Court noted that "any fee application ... [must] be supported by an itemized statement." Thus, neither of these sources mandates filing with the court the actual original contemporaneous time sheets. Moreover, this court does not read *Grendel's Den* as standing for such a proposition, as defendant appears to urge.[7]

What concerned the First Circuit in *Grendel's Den, inter alia,* was "*the failure* of counsel *to keep* contemporaneous time records." *Grendel's Den, supra,* 749 F.2d at 951 (emphasis added). There, "[t]he initial

problem confronting the attorneys, parties, trial court and reviewing court stem[med] from the process by which a fee application covering six years of work must be constructed *when no contemporaneous time records exist.*" *Id.* (emphasis added). Accordingly, the First Circuit was persuaded that there was "a need to clarify what effect *the lack* of contemporaneous time records should have upon a fees award." *Id.* at 952 (emphasis added).

In resolving the matter, the *Grendel's Den* court took an additional step beyond its previous position of "advising attorneys to 'maintain detailed, contemporaneous time records,' " *id.* (citation omitted), to do as "[o]ther courts ha[d] ... of *requiring* such contemporaneous records [be maintained]." *Id.* at 952 (citations omitted) (emphasis in original). Thus, the *Grendel's Den* court "serve[d] notice that ... the absence of detailed contemporaneous time records," i.e., their nonexistence, was thereafter to result "except in extraordinary circumstances ... in a substantial reduction ... or disallowance" of an award of fees. *Id.; see also Domegan v. Ponte,* 972 F.2d 401, 423 (1st Cir.1992) (when discussing this "substantial inducement" afforded counsel "to maintain detailed time records," the court cited *Grendel's Den,* 749 F.2d at 952 for the proposition that a "substantial fee reduction [is] appropriate if *detailed* contemporaneous time records not kept") (emphasis in original). Here, the court does not construe defendant's argument to suggest that plaintiff reconstructed a nonexistent record.

Repeatedly, the First Circuit has emphasized that "the fee-seeker must usually provide a particularized account of his claim." *Weinberger, supra,* 925 F.2d at 527 (citing *Grendel's Den, supra,* 749 F.2d at 952). "We have painstakingly delineated the specific documentary preconditions to fee awards, requiring litigants to submit a 'full and specific accounting' of the tasks performed, the dates of performance, and the number of hours spent on each task." *Id.* (citations omitted). *Accord Deary v. City of Gloucester,* 789 F.Supp. 61, 64 (D.Mass.1992) ("The party

---

7. At the outset, the court notes that *Grendel's Den* was a fees case under § 1988. However, assuming that this issue is equally relevant to all fee applications, the court addresses it.

seeking fees has a duty to submit detailed and contemporaneous time records to document the hours spent on the case.") (citation omitted).

"Contemporaneous time records not only are evidence that the time claimed was indeed so spent, but [also] provide [the requisite] details about the work. . . . This allows the paying party to dispute the accuracy of the records as well as the reasonableness of the time spent." *Calhoun v. Acme Cleveland Corp.*, 801 F.2d 558, 560 (1st Cir.1986). What was found unacceptable in *Calhoun* was that "[e]ach of the submissions . . . list[ed] the different tasks each attorney performed, the total number of hours, and the hourly billing rate; that [was] all." *Id.* In *Weinberger, supra,* 925 F.2d at 527, the First Circuit found "woefully deficient" a fee application "bereft of contemporaneous time records or any other suitable documentation."

Here, defendant does not challenge in any manner the accuracy of the records submitted or the reasonableness of the time spent. Moreover, the itemized statement submitted by plaintiff provides the requisite details and is thus in compliance, as this court sees it, with the *King* rule, which requires that " '[t]he court must secure from the attorneys a *full and specific* accounting of their time. . . .' " *Calhoun, supra,* 801 F.2d at 560 (quoting *King, supra,* 560 F.2d at 1027) (emphasis in original).

There can no longer be any doubt in this circuit about the need to submit "contemporaneous time records" or some "other suitable documentation" with a fee application. *Weinberger, supra,* 925 F.2d at 529. *See also Fidelity Guarantee Mortgage Corp. v. Reben,* 809 F.2d 931, 936 (1st Cir.1987) ("attorney kept and included with the affidavits contemporaneous time records as required under *Grendel's Den*"). Thus, the issue before the court, in light of how it construes defendant's argument, appears to become one of semantics: whether plaintiff's submission actually constitutes "contemporaneous time records". Defendant, raising the issue briefly in passing, intimates, without actually saying, that only the original records kept (presumably handwritten) would so qualify, contending as he did that plaintiff "did not

submit contemporaneous time sheets." Plaintiff counters that suggestion by explaining that the detailed itemization submitted with her affidavit is the result of the contemporary law office practice of using computers for record-keeping purposes.

Absent anything which suggests that plaintiff submitted a reconstructed record where no contemporaneous records had been kept, the court concludes that plaintiff's submission is a properly contemporaneous one. *Cf. Pontarelli v. Stone,* 781 F.Supp. 114, 121–22 (D.R.I.) ("abject failure to satisfy contemporaneous requirement" based upon evidence that time records submitted contained "estimates" of hours spent that were "made long after work had been performed"), *appeal dismissed,* 978 F.2d 773 (1st Cir.1992). In reaching this conclusion, the court was persuaded by the reasoning of other courts which "treat[ ] as contemporaneous records" those "records submitted [which] are merely typewritten transcriptions of the original handwritten time sheets" or are, as here, "the familiar computerized transcriptions of the billing records which most large law firms now store in computers." *David v. Sullivan,* 777 F.Supp. 212, 223 (E.D.N.Y. 1991) (citing *Lenihan v. City of New York,* 640 F.Supp. 822, 824 (S.D.N.Y.1986)). As these cited authorities have already wisely decided, "it would make no sense to penalize a party for attempting to present the contemporaneous records in a form convenient to the court." *Id. But see Deary, supra,* 789 F.Supp. at 64 (court, relying on *Grendel's Den,* stated that "[c]opies of the actual time records should be submitted," and deducted hours as a result of records that were not sufficiently precise and exhibited unreliability because of an implausible notation, entries on actual time slips which were not chronological, and fee requests that did not correspond to actual time slips). The court notes that flaws consisting of entries that are too general, implausible, or otherwise suspect, which were fatal in *Deary,* would be cause for concern, whatever form the documentation required to support a fees application took.

In sum, the court, following what it perceives to be a well-reasoned approach, holds that plaintiff's submission of the computerized transcription of contemporaneously generated time records which plaintiff's counsel

stores in her computer meets the "contemporaneous time records" requirement under applicable statutory and decisional law. *Accord Pastre v. Weber,* 800 F.Supp. 1120, 1124 (S.D.N.Y.1991) (chronological print-outs of computer records generated from contemporaneous daily time sheets sufficiently set forth required details).

### Conclusion [8]

For the reasons set forth more fully above, plaintiff's motion for attorney's fees (document no. 18) is granted to the extent that plaintiff's counsel is entitled to compensation, to be paid by defendant, for the 41.9 hours expended at an hourly rate of $112, totalling $4,692.80, plus uncontested costs of $242.50, for a total of $4,935.30. *See* 28 U.S.C. § 2412(a) (providing for judgment for costs); *Sierra Club, supra,* 639 F.Supp. at 1225–26 & n. 7.

SO ORDERED.

---

**8.** Respectfully and regrettably, the court notes that this order disagrees in certain respects with *Bouchard v. Sullivan,* No. 89–302–L (Loughlin, J., Dec. 4, 1992).

Initially, the court's reading of 28 U.S.C. § 2412(d)(2)(A)(ii) persuades it that the "special factor" which authorizes lifting of the $75 hourly cap does not include the litany of factors which served as the foundation of a reasonable fee in *King v. Greenblatt,* 560 F.2d 1024, 1026 (1st Cir.1977). *Compare Bouchard* at 5 *with supra* at 1435–36 and nn. 4, 5.

Additionally, the court reads *Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 951–52 (1st Cir. 1984), and its progeny in such fashion as to include computerized time records. *Compare Bouchard* at 6 *with supra* at 1438–40.